Gray v. St. Martins Press          CV-95-285-M     05/19/99

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Robert K. Gray,
      Plaintiff

v.                                          Civil No. 95-285-M

St. Martin's Press, Inc.
and Susan Trento,
      Defendants


**O R D E R**


Robert Gray brings this action seeking damages for five allegedly defamatory statements contained in The Power House, Robert Keith Gray and the Selling of Access and Influence in Washington ("The Power House"), a book authored by Susan Trento and published by St. Martin's Press. The book discusses how members of lobbying and public relations firms influence federal government operations and focuses on Gray as one of the most powerful and well-connected members of that group.

Pending before the court are two motions for summary judgment filed by defendants. In the first, defendants assert that plaintiff is a public figure and must, therefore, demonstrate that they acted with "actual malice" in order to prevail on his defamation claims. In the second, defendants assert that they are entitled to judgment as a matter of law with regard to each of the five allegedly defamatory statements in suit. On April 20, 1999, the court conducted a hearing, at which

both sides presented argument on the pending motions.  The
parties also submitted legal memoranda and volumes of exhibits in
support of their respective positions.

**Discussion**

A.    Plaintiff is a Limited Public Figure.

Plaintiff is, at least in Washington, D.C., and nationally
in governmental and lobbying circles, both successful and well-
known.  See, e.g., Affidavit of Robert K. Gray submitted in
support of motion for enlargement of time for discovery (dated
September 27, 1995), at para. 3 ("I have a national reputation in
the area of public relations.").  Defendants point out that he
has also been the subject of a television documentary and the
topic of (or, at a minimum, discussed in) several hundred
newspaper and magazine articles.  Thus, the only real question
before the court concerning plaintiff's status is whether he is a
"general purpose public figure" or a "limited public figure."

In Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974), the
Supreme Court recognized a distinction between these two types of
public figures:

> Some [plaintiffs] occupy positions of such persuasive
> power and influence that they are deemed public figures
> for all purposes.  More commonly, those classed as
> public figures have thrust themselves to the forefront
> of particular public controversies in order to
> influence the resolution of the issues involved.

2

Id., at 345.  More recently, this court (Devine, J.) addressed

the legal concepts of "general purpose public figures" and

"limited public figures," observing that:

> The designation "public figure" may rest on two
> alternative bases.  First, in some instances, an
> individual may achieve such pervasive fame or notoriety
> that he becomes a public figure for all purposes and in
> all contexts.  Second, persons of lesser fame may
> nonetheless qualify as limited public figures if they
> "thrust themselves to the forefront of particular
> public controversies."  Such limited public figures are
> subject to the "actual malice" standard only for
> defamation arising out of the public controversy into
> which they have thrust themselves.

Fagin v. Kelly, 978 F.Supp. 420, 426 (D.N.H. 1997) (citations

omitted).


In the wake of the Supreme Court's opinion in Gertz, supra,

the Court of Appeals for the District of Columbia Circuit

summarized the factors that ought to be considered when

determining whether a particular person is a general purpose

public figure.

> A court must first ask whether the plaintiff is a
> public figure for all purposes.  Gertz, as noted above,
> held that a plaintiff could be found to be a general
> public figure only after a clear showing "of general
> fame or notoriety in the community, and pervasive
> involvement in the affairs of society. . . ."  418 U.S.
> at 352.  He must have assumed a "role of especial
> prominence in the affairs of society . . ."  Time, Inc.
> v. Firestone, 424 U.S. 448, 453 (1976).  Accord,
> Wolston v. Reader's Digest Association, 443 U.S. 157,
> 165 (1979).  In other words, a general public figure is
> a well-known "celebrity," his name a "household word."
> The public recognizes him and follows his words and
> deeds, either because it regards his ideas, conduct, or

> judgment as worthy of its attention or because he
> actively pursues that consideration.

Waldbaum v. Fairchild Publications, Inc., 627, F.2d 1287, 1294 (D.C. Cir. 1980).

On the record presently before it, the court cannot conclude that defendants have shown, as a matter of law, that plaintiff is a general purpose public figure. The record does not support the conclusion that plaintiff was a "celebrity" or that his name was a "household word." To the contrary, as plaintiff notes, several editors and other employees at St. Martin's Press who actually worked on the publication of The Power House admitted at their depositions that, prior to their involvement with the book, they had never heard of Robert Keith Gray. Nothing presented suggests that the public — in the District of Columbia or nationally — was better informed or more aware of Mr. Gray's general involvement in the affairs of society. Thus, while plaintiff may be extraordinarily well known in certain Washington, D.C., circles, particularly with regard to his ability to influence public opinion and provide his clients with coveted access to powerful men and women in American politics, defendants have failed to establish that he attained that degree of notoriety or celebrity usually associated with a "general purpose public figure."

It is, however, equally clear that plaintiff has attained the status of "limited public figure." As the Court of Appeals for the Eleventh Circuit has recognized:

> The proper standards for determining whether plaintiffs are limited public figures are best set forth in Waldbaum v. Fairchild Publications, Inc., 627 F.2d 1287 (D.C. Cir. 1980), . . . . Under the Waldbaum analysis, the court must (1) isolate the public controversy, (2) examine the plaintiffs' involvement in the controversy, and (3) determine whether "the alleged defamation [was] germane to the plaintiffs' participation in the controversy." Id., at 1297.

Silvester v. American Broadcasting Companies, Inc., 839 F.2d 1491, 1494 (11th Cir. 1988). Here, the "public controversy" relates to familiar and often discussed public issues — the influence of, and access provided to political figures by, powerful Washington, D.C., lobbyists. And, there can be little doubt that plaintiff, one of the more powerful, influential, and successful lobbyists in Washington, qualifies as a central figure in that controversy. Finally, notwithstanding plaintiff's efforts to narrowly circumscribe the scope of the "public controversy" into which he thrust himself, each of the alleged defamatory statements set forth in The Power House relates directly to plaintiff's lobbying activities, his access to powerful and influential Washington "insiders," and his demonstrated ability to shape public opinion on various issues of public concern. Accordingly, the court concludes that plaintiff is a limited purpose public figure as to each of the statements at issue in this case.

5

B.    The Five Remaining Statements in Suit.

As to each of the five remaining statements at issue in this case, defendants assert that plaintiff cannot prove, by clear and convincing evidence, that they published the statements with "actual malice."  In order to prevail, plaintiff must demonstrate that defendants published the statements "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not."  New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964).  "Mere negligence does not suffice. Rather, the plaintiff must demonstrate that the author in fact entertained serious doubts as to the truth of [her] publication, or acted with a high degree of awareness of . . . probable falsity."  Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 510 (1991) (citations and internal quotation marks omitted).

The five statements contained in The Power House at issue in this case are:

Statement A:  "As others were cleaning out their desks, looking for jobs, briefing their successors, and preparing to leave the White House, Gray was busy dictating his memoirs to his White House Secretary."  The Power House, p. 53.

Statement C:  "I think there's a degree of venality on the part of Bob and lack of integrity which always took me aback.  A lot of it he would justify as being a businessman, but there was very little real basic principle and an awful lot, to me, of overcharging."  The Power House, p. 165.

Statement D:  "'. . . at Gray and Company [Robert Gray] stage-managed impressive-sounding calls.  A reporter would walk in and he would instruct his executive assistant to come in and announce that there was a call

6

from the White House.  Totally fabricated.  Absolutely. They would come in and they would say, 'Mr. Gray, Mr. Meese is on the phone,' and he would pick up a dead line or a line that was set up by the executive assistant, carry on a conversation of four or five short rapid sentences as though he was in constant communication and hang up.  And then, of course, the reporters, dazzled, would then report that a White House phone call came in,' explained one Gray and Company executive."  The Power House, p. 167-68.

Statement E:  "And the Gray and Company employees in Spain were to be convinced that the office was used as a money laundering operation for the Reagan administration's private intelligence network."  The Power House, p. 273.

Statement G:  "One Gray and Company executive in a position to know said that Gray and Company was making payments to Zeller."  The Power House, p. 202.

As to Statement C, defendants have demonstrated that no reasonable trier of fact could conclude that defendants acted with "actual malice" or with reckless disregard for whether the statement was false.  Among other things, defendants have submitted copies of the transcript of Trento's tape-recorded interview with Barry Zorthian, former Senior Vice President in the public relations division of Gray & Company and the source of the "overbilling" statement.  Defendants have also submitted statements from former Gray & Company clients regarding what they perceived as excessive bills.  Finally, they have provided portions of other publications which generally speak about excessive billing practices in the public relations industry and, in at least a few instances, make specific reference to Gray & Company.  Defendants have, therefore, demonstrated that, as a matter of law, no reasonable trier of fact could conclude that

7

Statement C was published with actual malice. Accordingly, with regard to that statement, defendants are entitled to summary judgment.

As to the remaining four statements, however, the presence in the record of genuine issues of material fact precludes the court from granting defendants' motion for judgment as a matter of law. As to each such statement, a jury must resolve the conflicts and determine whether defendants acted with actual malice in publishing it.

### Conclusion

For the foregoing reasons, the court holds that plaintiff is, as a matter of law, a limited public figure for the purposes of the statements at issue in this suit. To the extent that defendants' motion for summary judgment (document no. 173) seeks a legal determination as to that issue, the motion is granted. With regard to defendants' remaining motion for summary judgment (document no. 175), it is granted in part and denied in part. As to Statement C, defendants have demonstrated that they are entitled to judgment as a matter of law. With regard to all remaining statements, however, defendants' motion for summary judgment is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 19, 1999

cc:   James G. Walker, Esq.
      Mark D. Balzli, Esq.
      Cletus P. Lyman, Esq.
      William L. Chapman, Esq.
      John C. Lankenau, Esq.
      Steven M. Gordon, Esq.
      Seth L. Rosenberg, Esq.